UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PAUL JOHN REID DAWSON,

        Plaintiff,

v.

CORRECTIONS OFFICER H. WELLS;
CORRECTIONS OFFICER R. WATSON,

        Defendants.

_____

Case No. 2:17-cv-00608-MC

OPINION AND ORDER

MCSHANE, District Judge:

       Plaintiff, an inmate at the Eastern Oregon Correctional Institution (EOCI), filed suit pursuant to 42 U.S.C. § 1983 and alleged that defendants brought false misconduct charges against him in retaliation for exercising his First Amendment rights. Defendants now move for summary judgment on grounds that plaintiff failed to exhaust his administrative remedies and cannot sustain his claim on the merits. I find that defendants' involvement in the misconduct charges against plaintiff advanced a legitimate correctional goal, and defendants are entitled to summary judgment.

1 – OPINION AND ORDER

BACKGROUND

In 2015, plaintiff received a favorable settlement in a case brought against Oregon prison officials. Plaintiff alleges that Officers Watson and Wells subsequently made sarcastic comments about plaintiff's lawsuit and other grievances, referred to plaintiff as "esquire" or "legal beagle," and told plaintiff that he could not "sue us for this one" after plaintiff was given a disciplinary sanction in June 2016 for prohibited conduct.[1] Compl. ¶¶ 9, 14-16, 19 (ECF No. 2).

On January 3, 2017, plaintiff reported to EOCI officers that his cellmate, Benton, had a weapon. Plaintiff also gave a note to an officer that said, "12B knife in drawer for staff assault." Defs.' Ex. 1 at 1; Defs.' Ex. 2 at 21 (ECF Nos. 87, 88).[2] Plaintiff stated that "he wanted no part of it and that he was not going back to the cell until it was taken care of." Defs.' Ex. 2 at 21. Correctional officers searched the cell and eventually found two homemade knives – made from razor blades, a toothbrush, and shampoo labels – in Benton's drawer. Defs.' Ex. 1 at 1. Benton and plaintiff were placed in disciplinary segregation. Plaintiff requested that he be moved to housing unit E-4, and plaintiff's request was granted. Watson Decl. ¶ 9 (ECF No. 71). Benton remained in disciplinary segregation until his disciplinary hearings.

---

[1] In response to defendants' motion, plaintiff makes clear that his retaliation claim is not based on any of these actions, his June 2016 disciplinary sanction, or any statements or conduct by defendants other than those supporting the Misconduct Report issued against him in January 2017. Pl.'s Sur-Reply at 1 (ECF No. 81) ("The only retaliation plaintiff is pointing to is the Retaliatory Misconduct Report and memo filed by the Defendants. The statements and actions of the Defendants prior to and post misconduct report are only to show cause.").

[2] Additional information regarding plaintiff's report of the weapon is included in Defs.' Ex. 3 (ECF No. 89), an unredacted copy of which defendants provided for in camera review. Defendants submitted Exhibits 1 through 3 in response to a court order; plaintiff maintains that defendants did not submit all responsive documents and moves to supplement the record with transcripts of his disciplinary hearing, Benton's "move slip," and email communications showing Wells did not author Benton's Misconduct Report. *See* Pl.'s Mot. Suppl. Record (ECF Nos. 92-92). The evidence of record establishes that Wells did not write Benton's Misconduct Report, and plaintiff fails to explain why the other documents are relevant to the issues raised by defendants' motion. Therefore, the motion is denied.

On January 4, 2017, plaintiff claims that an inmate in E-4 approached him and said, "Officer Watson told me to tell you good job setting up your cellmate." Compl. ¶ 22. Plaintiff claims this statement made him fearful that Officer Watson was spreading rumors about him.[3]

On January 7, Officer Watson informed Inspector Troy Holman that "something just doesn't seem right about the incident that happened with Inmate Benton." Defs.' Ex. 2 at 11. Officer Watson explained:

> Inmate Benston was locked up while he was at work because he supposedly had a weapon in his cell. He cellie Inmate Dawson…came to the Officer station and reported to Officer Garton that his cellie had a weapon and was planning to assault staff. So staff came and found a weapon in his cell…and they locked up Inmate Benton while he was at work. The weird part to me is that for the last 4 months I've been on the 5 day on B2[.] Inmate Dawson has been pestering me about helping him move to the East side. Constantly asking me to email Lt. Carey to get him moved. I kept telling Dawson to send kytes and that when he was eligible he would probably get moved. At one point I told Dawson he would not be getting moved to the East side and to stop bugging me. Dawson [alluded] to the idea that if I didn't move him he would have to come up with his own way. (that is my opinion)…Magically after they locked up Benton, Inmate Dawson was moved to the East side to the unit he wanted to move to. If nothing comes of it oh well, it just seemed a little off that this old man with no misconduct history would suddenly want to make a weapon and assault staff and the one who told on him is a guy with an extensive misconduct history who is known to be manipulative.

*Id.* This information was forwarded to the Hearings Officer conducting Benton's disciplinary hearing.

On January 9 and 13, 2017, disciplinary hearings were conducted regarding the charges against Benton. Defs.' Ex. 2 at 1. Benton denied making the weapons and claimed that his drawer had a gap, even when locked, that would allow someone to place the knives in his drawer. Officer Watson was called as a witness and provided several mitigating statements. *Id.* The Hearings Officer had asked Officer Watson to determine whether the drawer had a gap that

---

[3] Officer Watson admits that he warned another inmate to avoid plaintiff because plaintiff had gotten his cellmate in trouble. Officer Watson also admits that perhaps he should not have made those comments. Watson. Decl. ¶¶ 13-14.

3 – OPINION AND ORDER

would allow someone to place the knives in the locked drawer. *Id.* at 12. Ultimately, on January 13, 2017, the charges against Benton were dismissed for insufficient evidence. *Id.* at 1-2.

The same day, Officer Wells issued a Misconduct Report charging plaintiff with violating Possession of a Weapon I, Property I, and Disobedience of an Order I. Defs.' Ex. 1 at 4. Officer Wells apparently had been the Security Office for Benton's hearing. The Report stated:

> On 1-3-17 Inmate Paul Dawson…handed Officer T. Garton a hand written note that said (12-B knife in drawer for staff assault). A search of cell 12 bunk B was conducted by Officers T. Garton and J. Mitchell. There were 2 weapons found in the locked drawer of [Inmate Benton]. The two weapons were razor blades attached to a half of toothbrush, packaged in a small zip lock baggie with Q-tips, see attached photos. At the time of both the information being passed to staff and the search for the weapon, Inmate Benton was at work in the Kitchen.
>
> Inmate Benson was escorted to DSU and had his Administrate Hearing today Upon the conclusion of Inmate Benson's Administrative Hearing it was decided by Hearing Officer H. Nevel that there was insufficient evidence to find Inmate Benson in violation of any rule The hearing was dismissed for insufficient evidence.
>
> During the investigation numerous documents were submitted by staff members providing documentation that leads one to believe that Inmate Dawson made the weapons and planted the weapons in inmate Benson's locked drawer after he had gone to work. He then notified staff of the weapon. It would appear he did this for two reasons, one had didn't like Inmate Benson and two he knew if he provided staff with intel concerning a weapon the administration would be liable for his safety and he would be moved to the East side of the Institution. See memo from officer Szilagyi Assignment Officer.
>
> There were two inmates assigned to cell 12 Inmate Dawson and Inmate Benson. It has already been determined by an administrative hearing [that] Inmate Benson was not the maker or owner of the weapons. No other inmates are allowed into a cell except for the ones assigned to that cell.

*Id.*

On January 24, 2017, a telephonic disciplinary hearing was conducted regarding the allegations against plaintiff. *Id.* at 1-2. Officer Wells was the Security Officer present at

plaintiff's hearing.[4] The Hearings Officer noted that Officer Watson had confirmed Benton's drawer had an opening wide enough to allow someone to plant the weapons. *Id.* at 1. The Hearings Officer also made the following findings:

1) Benton's drawer was "locked when the search began," and Benton was not the cell and was at work;

2) "Officer Mitchell found two disposable razors on Inmate Benton's shelf that were not tampered with by having the razor blades intact";

3) "Inmate Benton denied knowing about the razors and that his drawer can be partially opened when locked";

4) "Officer Watson reported that Inmate Dawson had requested numerous moves to the east side over several months through him and constantly asking Officer Watson to email Lt. Carey to get him moved, but had not been granted one. He reported telling Inmate Dawson he would not be getting a move and to stop bugging him about it. He reported Inmate Dawson [alluded] to the idea that if he did not get a move he would have to come up with his own way";

5) "Inmate Benton had requested an incentive move in December, explaining he did not get along with Inmate Dawson. Inmate Dawson was aware of this."

*Id.*

Plaintiff made a statement at his disciplinary hearing and denied planting the knives in Benton's drawer. Plaintiff stated that Benton had complained about an officer "talking bad about his Muslim religion the day before," and he thought he saw Benton "making a shank out of a plastic spoon" and placing it in his drawer. Defs.' Ex. 1 at 1-2. Plaintiff admitted that he "had been trying to get a move" but that he was not upset with Benton. Plaintiff did not remember telling Officer Watson he would have to "come up with his own way to get a move." *Id.* at 2.

The Hearings Officer found that plaintiff had committed the violations of Possession of a Weapon I and Property I:

---

[4] Plaintiff also alleges that Officer Wells handcuffed plaintiff to the wall during the hearing, evidencing his animosity toward plaintiff.

5 – OPINION AND ORDER

> It would appear Inmate Dawson set up Inmate Benton by placing the weapons in Inmate Benton's drawer in order to get moved to the eastside, thereby possessing a weapon at some point. Inmate Dawson admitted to writing the note which stated the weapons were meant for staff, but he claims Inmate Benton did not say anything about being upset with staff, which indicates Inmate Dawson was wanting the note to bring the maximum attention to the issue by saying the weapon was meant for staff. Inmate Dawson was immediately moved to the east side after reporting the weapons to staff.

*Id.* at 2. Plaintiff was sanctioned with 120 days in disciplinary segregation, 21 days of lost recreational yard time, and a $100 fine. *Id.* at 2-3.

On April 17, 2017, plaintiff filed this action alleging that Officers Wells and Watson retaliated against him by making false misconduct accusations.

## DISCUSSION

Defendants move for summary judgment on grounds that plaintiff failed to exhaust his available administrative remedies and fails to present evidence of a First Amendment violation. To prevail on their motion, defendants must show there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) ("If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."). The court must construe the evidence and draw all reasonable inferences in the light most favorable to plaintiff. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

Under the Prison Litigation Reform Act (PLRA), inmates must exhaust all available administrative remedies before filing a federal action to redress prison conditions or incidents. *See* 42 U.S.C § 1997e(a). The exhaustion requirement is mandatory and requires compliance with both procedural and substantive elements of the prison administrative process before a prisoner files suit. *Woodford v. Ngo,* 548 U.S. 81, 85, 93-95 (2006); *McKinney v. Carey*, 311

F.3d 1198, 1199-1200 (9th Cir. 2002) (per curiam). Once the defendant shows that the inmate did not exhaust an available administrative remedy, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. This burden is met when the prisoner shows that he or she took "reasonable and appropriate steps," but prison officials nonetheless prevented or interfered with the prisoner's attempts to exhaust. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010).

The Oregon Department of Corrections (ODOC) employs a three-step grievance and appeal process. Inmates may file grievances for numerous issues, including "unprofessional behavior or action which may be directed toward an inmate by an employee" of ODOC. Or. Admin. R. 291-109-0140(2)(c). If a grievance is returned to the inmate on procedural grounds, the inmate may resubmit the grievance within fourteen days if the procedural errors can be corrected. *Id.* § 291-109-0160(5). If a grievance is accepted, the inmate may appeal a response to the grievance within fourteen days from the date the response was sent to the inmate. *Id.* 291-109-0170(1)(b). If the appeal is denied, the inmate may file a second appeal within fourteen days from the date the denial was sent to the inmate. *Id.* 291-109-0170(2)(c). A decision following a second appeal is final. *Id.* 291-109-0170(2)(f).

Plaintiff filed several grievances against defendants after his disciplinary hearing. On January 27, 2017, plaintiff submitted Discrimination Complaint EOCI-2017-01-087 and alleged that Officer Wells was retaliating against him. Miles Decl. Att. 4 at 2 (ECF No. 72). The discrimination complaint was returned to plaintiff because he did not explain how Officer Wells' alleged conduct was discriminatory. *Id.* Att. 4 at 1. Plaintiff did not submit another complaint.

On March 14, 2017, plaintiff submitted EOCI-2017-03-035 and complained above several correctional officers, including Officers Wells and Officer Watson. *Id.* Att. 5 at 2. On March 23, 2107, the complaint was returned to plaintiff because an inmate cannot grieve multiple staff in one grievance. *Id.* Att. 5 at 1. Plaintiff did not submit a corrected grievance.

On April 17, 2017, plaintiff filed Grievance EOCI-2017-04-054 and complained that Officer Watson stapled his mail in the wrong place and commented on plaintiff's lawsuits. Miles Decl. Att. 6 at 1. On May 17, 2017, Officer Watson responded to the grievance. *Id.* Att. 6 at 3. Plaintiff did not appeal the response.

The evidence makes clear that plaintiff did not exhaust the grievance process regarding defendants' alleged retaliation against him. Plaintiff maintains that the grievance process was unavailable to him, because inmates are not allowed to grieve "[m]isconduct reports, investigations leading to or arising from misconduct reports, or disciplinary hearings, findings and sanctions," and plaintiff's claims involves a misconduct report. Or. Admin. R. 291-109-0140(3)(e). Defendants emphasize that while inmates may not grieve the issuance of a misconduct report, inmates may grieve "unprofessional conduct" such as retaliation, and plaintiff failed to do so. *Id.* 291-109-0140(2)(c).

Regardless of exhaustion, plaintiff cannot defeat summary judgment. Plaintiff maintains that Officers Wells and Watson conspired to bring a disciplinary action against him because plaintiff successfully sued ODOC on a prior occasion and has filed many grievances. Plaintiff argues that their retaliatory motive is evidenced by their comments about his lawsuit and their accusations that plaintiff "set up" his cellmate.

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities and as well as a right of meaningful access to the courts." *Jones v. Williams*,

791 F.3d 1023, 1035 (9th Cir. 2015); *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). To establish a First Amendment retaliation claim, plaintiff must establish the following elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes*, 408 F.3d at 567-68 (footnote omitted). Here, plaintiff fails to show that plaintiff's protected conduct was the "motivating factor" behind defendants' actions or that their actions did not "reasonably advance a legitimate correctional goal." *Broadheim*, 584 F.3d at 1271.

The evidence of record shows that Officer Wells submitted the Misconduct Report against plaintiff after several officers, including Watson, provided information indicating that plaintiff had framed Benton for a serious rule violation in an attempt to move to a preferable housing unit.[5] Defs.' Ex. 1 at 4. The Hearings Officer found plaintiff guilty of the charged violations based on the evidence presented, which included plaintiff's own statements. Given the Hearing Officer's findings, it is undisputed that Officer Wells' report and Officer's Watson's statements advanced the legitimate correctional goal of enforcing prison rules.

Plaintiff nonetheless argues that this Court cannot find a legitimate correctional goal based on the fact that "some evidence" supported the Hearing Officer's decision. *See Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985) (holding that a prison disciplinary decision

---

[5] Plaintiff makes much of the fact that Officer Wells authored plaintiff's Misconduct Report, even though Wells did not personally observe the conduct described in the report. Regardless, the issue before the Court is whether Officer Wells' actions advanced a legitimate correctional goal.

9 – OPINION AND ORDER

must be supported by "some evidence in the record"). In so arguing, plaintiff relies on the Ninth Circuit's decision in *Hines v. Gomez*,108 F.3d 265 (9th Cir.1997).

In *Hines,* a correctional officer had alleged that a prisoner threatened the officer and obtained an object from another inmate in violation of prison rules. The officer charged the prisoner with a rule violation, and a hearings officer found that the prisoner had committed the violation based solely on the officer's accusation. *Hines*, 108 F.3d at 267. The prisoner filed suit and alleged that the officer had issued a false disciplinary report against him in retaliation for exercising his First Amendment right to file grievances. At trial, the jury found that the officer falsely accused the prisoner and "filed the disciplinary report with a retaliatory motive." *Id.* at 267-68.

On appeal, the officer argued that the district court should have analyzed the officer's accusation under the "some evidence" rule applicable to disciplinary hearings, presumably to determine whether the officer's conduct was retaliatory or advanced a legitimate correctional goal. *Hines*, 108 F.3d at 268 ("The question becomes whether the deferential *Hill* standard of review should apply not only to a prison disciplinary board's finding of a rule violation, but also to a prison guard's initial accusation of a rule violation where the guard's accusation itself allegedly is false and retaliatory."). The Ninth Circuit found that the "some evidence" rule did not apply to the prisoner's First Amendment retaliation claim. Specifically, the court held that "where a prisoner alleges a correctional officer has falsely accused him of violating a prison rule in retaliation for the prisoner's exercise of his constitutional rights, the correctional officer's accusation is not entitled to the 'some evidence' standard of review that we afford disciplinary administrative decisions." *Hines,* 108 F.3d at 269.

*Hines* is distinguishable from this case. Unlike *Hines*, the evidence against plaintiff was not based solely on defendants' unsupported accusations. *Hines,* 108 F.3d at 268-69 (noting that "a guard may, and often does, file an accusation solely on his own word, making his mere accusation the only 'modicum of evidence'"). Instead, the Hearings Officer also considered evidence provided by other officers as well as plaintiff's statements. In particular, the Hearings Officer emphasized that plaintiff "admitted to writing the note which stated the weapons were meant for staff" and wanted "the note to bring the maximum attention to the issue by saying the weapon was meant for staff." Defs.' Ex. 1 at 2.

Moreover, plaintiff does not allege that the information provided by Officers Wells and Watson was actually false. For example, plaintiff does not allege that either defendant falsely reported seeing plaintiff plant the knives in Benton's drawer or hearing plaintiff admit to such conduct. Rather, defendants provided circumstantial evidence suggesting that plaintiff – the person who reported the knives and the only other person who had access to Benton's drawer – had a motive for planting evidence against Benton. In fact, plaintiff admitted that he reported Benton's alleged possession of the knives and that he had previously sought a transfer to a different unit.

In sum, the undisputed evidence of record supported the allegations against plaintiff, and he cannot show that the actions taken by Officers Wells and Watson failed to advance a legitimate correctional goal. Accordingly, defendants are entitled to summary judgment.

Finally, plaintiff filed a motion for injunction relief and requested that he be "transferred to where Defendant Watson is not." Pl.'s Decl. in Support of Mot. Prelim. Injunction at 1 (ECF No. 97). Plaintiff alleges that Watson, now a Sergeant "has come to [plaintiff's] housing unit 3 times and worked an 8 hour shift." *Id.* However, plaintiff does not allege any specific conduct by

Watson to warrant this Court's involvement in ODOC's housing decisions, particularly when ODOC is not a party to this action. Even if the Court accepts the allegations plaintiff has made against Watson, he fails to show the likelihood of irreparable harm based on Watson's past conduct, and he has not succeeded on his retaliation claim. *Winters v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). Accordingly, plaintiff is not entitled to injunctive relief.

## CONCLUSION

Defendants' motion for summary judgment (ECF No. 69) is GRANTED, and plaintiff's Motions to Supplement the Record and for Preliminary Injunction (ECF Nos. 93, 96) are DENIED. This case is DISMISSED.

Any appeal from the judgment dismissing this case would be frivolous and not taken in good faith. Therefore, plaintiff's in forma pauperis status is revoked.

IT IS SO ORDERED.

DATED this 27th day of June, 2019.

s/Michael J. McShane_____
Michael J. McShane
United States District Judge
